*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MAHIR D. ELDER, M.D., PC and DR. MAHIR
ELDER,

        Plaintiffs-Appellants,

v

DEBORAH L. GORDON, PLC, doing business as
DEB GORDON LAW AND/OR DEBORAH
GORDON LAW, and DEBORAH L. GORDON,

        Defendants-Appellees.

UNPUBLISHED
July 25, 2024

No. 364387
Wayne Circuit Court
LC No. 21-004012-CB

Before: MARKEY, P.J., and BORRELLO and GARRETT, JJ.

PER CURIAM.

Plaintiffs Mahir D. Elder, M.D., PC, and Dr. Mahir Elder appeal as of right the trial court's order granting summary disposition in favor of defendants Deborah L. Gordon and her law firm Deborah L. Gordon, PLC, pursuant to MCR 2.116(C)(8).[1] For the reasons set forth in this opinion, we affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

At the outset, it is important to understand the limited scope of judicial review and the materials that a court can consider when deciding a motion under MCR 2.116(C)(8). Surviving a motion for summary disposition under this rule does not require the opposing party to meet a high standard, as Michigan follows a "notice pleading" approach. When reviewing a (C)(8) motion, the court must accept all factual allegations as true and base its decision solely on the pleadings. The court can consider any attachments to the complaint as part of the pleadings, but their consideration

---

[1] We will use the singular term "plaintiff" to refer to individual plaintiff Dr. Elder and use the singular term "defendant" to refer to individual defendant Deborah Gordon.

is limited, and they cannot be used as substantive evidence to dismiss the plaintiff's claims under MCR 2.116(C)(8).

The present action, involving claims of legal malpractice and breach of contract, arises out of defendant's representation of plaintiff in a wrongful termination and retaliation suit that included claims under the federal False Claims Act (FCA), 31 USC 3729 *et seq.* as well as various other claims. Plaintiff had sued Tenet Healthcare Corporation, which controlled Detroit Medical Center (DMC), and the action proceeded to arbitration through JAMS. JAMS is a private alternative dispute resolution provider.[2] In that underlying suit, defendant represented both Dr. Amir Kaki and plaintiff, both of whom had their employment terminated by Tenet.[3] Former Supreme Court Justice, now Judge Mary Beth Kelly, acted as the arbitrator.

At arbitration, defendant presented calculations from Nitin V. Paranjpe as evidence of the plaintiff's losses from unlawful termination. Paranjpe created three charts: Chart A, Chart B, and Chart S, which he explained as follows:

> Chart A is the loss of his VHS[4] revenue stream only, whereas Chart B is the loss in total revenue/income including his work at the Heart and Vascular Institute.
>
> a. Chart A is the stream of VHS revenue that would have accrued to Dr. Elder. Dr. Elder has not been able to offset this revenue stream as of today. The difference between the projected revenue stream and his actual revenue stream is his loss. Losses are broken down into past (through December 31, 2020) and future (to the age of 75). Losses are discounted to present value using the yield on the 30-year-U.S. Treasury bond as of yesterday of 1.34%. The losses are shown in Chart A.
>
> b. Chart B is the loss in income estimated for Dr. Elder. This is an estimate of his loss in income at Elder MD PC, and his earnings from the Heart and Vascular Institute as well. Losses are discounted to present value using the yield on the 30-year-U.S. Treasury bond as of yesterday of 1.34%. The losses are shown in Chart B.

Chart S summarizes the various calculations.

Furthermore, plaintiff argued that defendant's request for attorney fees, which was submitted to the arbitrator, should also cover the fees incurred by plaintiff to his personal attorney, Mohammed Abdrabboh, over the course of several years in addressing Tenet's treatment of plaintiff. Although defendant requested fees for her law firm in relation to the arbitration, she decided not to include attorney Abdrabboh's fees despite previously indicating to plaintiff that she

---

[2] JAMS, *About Us* <https://www.jamsadr.com/about/> (accessed June 25, 2024).

[3] Dr. Kaki also received an arbitration award, but he is not a party to the subsequent legal malpractice case.

[4] VHS stands for "Vanguard Health System," which had owned DMC before Tenet acquired VHS.

would. In an e-mail, defendant explained that she omitted Abdrabboh's fees because, after reviewing the law, she believed it would be a significant stretch and did not want to pursue that avenue.

In the written final award issued on December 18, 2020, the arbitrator awarded approximately 10.6 million dollars in total compensation, costs and attorney fees to plaintiff and Kaki. In the award, the arbitrator stated in relevant part:

> Under the FCA, Claimants are entitled to an award of their back pay doubled, and reasonable front pay. Kaki has been more successful in mitigation as he has leadership positions at St. John's Ascension and his non-DMC revenue was increasing prior to his termination and nonrenewal of membership. Moreover, he had established himself in other hospital systems prior to being recruited to DMC. Paranjpe's Chart B calculates, with reasonable certainty, his back pay from DMC sources and calculates front pay with reasonable certainty as well. Kaki is awarded backpay of $2,352,718. (His backpay as it is reflected on Chart B, doubled). He is awarded two years of front pay, $1,034,892 (per Chart B), again based on his ability to mitigate somewhat successfully and given his shorter career at DMC.
>
> Elder has spent his entire career at the DMC, and is closely associated with the DMC. He has not been able to mitigate his damages through new leadership positions and the loss of patient referrals, which he credibly testified to is borne out in the credible financial analysis prepared by Paranjpe. Elder is awarded his backpay, doubled per the FCA, $2,360[,]676. Elder is awarded four years of front pay in recognition that his strong association with DMC may make it more difficult for him to successfully transition into the situation he enjoyed prior to termination and nonrenewal. *Per Chart B*, Elder's front pay is $2,156,231. Both Kaki and Elder are entitled to pre and post judgment interest on these monetary awards. [Emphasis added.]

Plaintiff's current action against defendant is based on the allegation that the arbitrator, while intending to use values from Chart B, used values from Chart A. It is also alleged that defendant should have recognized this error. In the first amended complaint, plaintiff stated that the backpay from Chart B is $3,779,452 and the front pay is $3,310,256, resulting in an arbitrator's award that is $2,572,801 less than it should have been.

The arbitrator awarded $1 million each to Dr. Kaki and plaintiff as exemplary damages. The specific award to plaintiff, not including attorney fees, was $5,516,907, plus interest. The arbitrator also granted equitable relief, including the reinstatement of plaintiff's membership and privileges at DMC without limitations for a period of one year.

Regarding attorney fees, the arbitrator stated:

> The FCA permits an award of attorney fees as an element of damages. Claimants' Request for Attorney Fees and Costs ("Request") is granted as follows: Fees are awarded to the Deborah Gordon Law Firm in the amount of $623,816.47, as supported by the detailed submission in Tab L of the Request. The time spent

-3-

on matters is reasonable, the rates are reasonable in light of the experience and accomplishment of the lawyers involved, and is supported by the Economics of Law Practice in Michigan, 2017 Attorney Income and Billing Rate Summary Report. Costs in the amount of $110,673.01 is also awarded on the basis the costs are reasonable and were necessarily occurred [sic—incurred] in the course of the representation. Costs are awarded in part as a further sanction for the discovery sanction addressed above which prejudiced Claimants in preparing their case. No further sanctions are awarded on this issue.

Attorney fees incurred by Kerr Russell's representation of the Claimants in the Fair Hearing are not awarded. The Fair Hearing was a procedural aspect which Claimants availed themselves of, but the FCA does not provide for attorney fees of this interim procedure. Fees are awarded for a violation of the FCA which was not determined at Fair Hearing stage, but rather was determined through arbitration. Any damages claim not specifically addressed herein are denied.

On January 4, 2021, defendant filed a motion on behalf of plaintiff and Dr. Kaki to confirm the arbitration award. On February 1, 2021, the federal district court entered an order granting the motion and denying a motion brought by Tenet to vacate the award.

Defendant later discussed settlement offers from Tenet in exchange for plaintiff and Dr. Kaki giving up their reinstatement rights. Plaintiff claims that defendant misrepresented the offers as being greater than the amounts already awarded, when they were for less money. Plaintiff also alleges a conflict of interest arose over how to divide the additional money offered by Tenet between plaintiff and Kaki. Plaintiff fired defendant and hired Abdrabboh to negotiate on his behalf, as defendant continued to represent Kaki, obstructing plaintiff's attempts to negotiate through new counsel. Eventually, a global settlement was reached.

In the amended complaint, plaintiffs made four claims against defendants. Count I claimed that defendants breached the contract by demanding a percentage of the settlement amount, even though the original agreement only entitled them to a fee based on the judgment amount and explicitly excluded any payment for a settlement. Plaintiffs also alleged that defendants breached the contract by asserting a lien on the settlement proceeds and claiming an excessive amount. Count II alleged a breach of fiduciary duty, loyalty, and confidentiality. Plaintiffs detailed how defendants breached these duties.

a. Failing to advise Plaintiffs of negotiations with Tenet

b. Failing in her fee agreement to allocate how attorney fees and costs would be allocated between two potential competing clients.

c. Intentionally and negligently disclosing confidential information belonging to Plaintiffs

d. Making false statements to Plaintiff about the status of negotiations with Tenet.

-4-

e. Failing to notice a conflict of interest between Plaintiffs and Dr. Kaki

f. Even after the conflict of interest between Plaintiff and Dr. Kaki (current client of Defendants) was clear, Defendants continued to represent Dr. Elder's interest in a manner they knew was not in Dr. Elder's best interest.

g. Defendants [sic] conduct after being terminated by Plaintiff was in violation of the Michigan Rules of Professional Responsibility 1.9, in a manner that worked against Plaintiffs' interest.

Counts III and IV were very similar. Count III asserted professional negligence, whereas Count IV asserted breach of fiduciary duty. However, both counts relied on the same acts by defendant. In support of both counts, plaintiffs relied on defendant's failure to request all available damages during arbitration, failure to recognize and correct the allegedly erroneous amount of the award to plaintiff, misleading plaintiff about post-award settlement negotiations, obstructing plaintiff's ability to effectively negotiate a settlement through his new counsel, and causing settlement proceeds to be held up in federal court.

At one point during the proceedings in the trial court, the court ordered that a question be sent to Judge Mary Beth Kelly, inquiring if she intended to award the amount stated in the written arbitration award to plaintiff or if she intended to award some other amount. This Court subsequently granted plaintiff's application for leave to appeal the order. *Mahir D Elder, MD, PC v Deborah L Gordon, PLC*, 343 Mich App 388, 390; 997 NW2d 322 (2022). On appeal, this Court reversed, holding that MCL 691.1694(4) precludes asking an arbitrator such a question after the award has been finalized. *Id*. at 392-393. This Court explained:

The arbitrator could have been asked to clarify the factual question at issue in this case before the arbitration award was finalized and that underlying case was dismissed. But to ask the arbitrator a factual question now, in a separate proceeding, would violate MCL 691.1694(4). [*Id*.]

On remand, defendants requested summary disposition under MCR 2.116(C)(8) and the trial court granted the motion. Regarding the professional malpractice claim, the trial court determined that there was no discovery available to prove that Judge Kelly had made an error, and therefore defendants were not negligent. The court interpreted plaintiff's claim as asserting that defendant should have appealed the arbitration award amount due to an alleged error in relying on incorrect evidence, resulting in plaintiff being "shorted" approximately $2.5 million. The court concluded that such an appeal was not permitted by law, and therefore the malpractice claim was not legally sustainable. Additionally, the court ruled that defendant was not responsible for failing to seek Abdrabboh's legal fees, as an attorney is not liable for tactical decisions made in good faith, founded in the law, and in the best interest of their clients.

Regarding the breach-of-contract claim, the trial court reasoned:

The Count 1, Breach of Contract fails because it alleges no injury and because the lien arose as a matter of equitable right and is provided for in the contract. Causation and damages are essential elements in a breach of contract

-5-

claim, Plaintiff has failed to plead any facts alleging how claiming a lien upon proceeds of a settlement proximately caused Plaintiff's [sic] any injury or what form the injury took, nor can claiming a lien expressly provided for in the retainer for breach. The retainer states quite clearly attorney shall have a lien for services and for any costs or disbursements upon all monies paid or payable.

Moreover, Plaintiff's [sic] claim that the lien was beyond the standard of reasonableness, lacks any supporting factual allegations and contradicts the plain language of the retainer which allows for a lien on all monies paid or payable.

The court also dismissed Count II. The court ruled that plaintiff failed to plead damages and premised the claim solely on an alleged violation of the rules of professional conduct, which is inadequate to maintain such a claim. Finally, the court also dismissed Count IV because that claim was subsumed by the Count III malpractice claim, and plaintiff did not allege any special duty owed by defendants beyond that owed by an attorney. The trial court also incorporated the arguments as set forth in defendants' brief and motion.

## II. SUMMARY DISPOSITION

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). The proper interpretation of a contract is a matter of law this Court also reviews de novo. *Sweebe v Sweebe*, 474 Mich 151, 154; 712 NW2d 708 (2006).

A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint. When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone. A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery. [*El-Khalil*, 504 Mich at 159-160 (citations omitted).]

### A. COUNT III—MALPRACTICE CLAIM

We begin our analysis by discussing the main argument that plaintiff seems to prioritize: whether the trial court made a mistake in granting defendants' motion for summary disposition regarding the plaintiffs' legal malpractice count.

To establish a claim of legal malpractice, a plaintiff must prove the following: "(1) the existence of an attorney-client relationship"; "(2) negligence in the legal representation of the plaintiff"; "(3) that the negligence was a proximate cause of an injury"; and "(4) the fact and extent of the injury alleged." *Bowden v Gannaway*, 310 Mich App 499, 503; 871 NW2d 893 (2015) (quotation marks and citation omitted).

Here, plaintiffs have clearly stated that there was an attorney-client relationship during the arbitration regarding wrongful termination and retaliation. Plaintiffs claim that defendants were negligent in providing legal representation in several ways. Specifically, plaintiffs allege that defendants were negligent during arbitration by: (1) failing to request all available damages,

including attorney fees for attorney Abdrabboh; (2) failing to notice that the arbitrator used the wrong chart to calculate the damages awarded and consequently failing to request that the arbitrator correct the damages awarded before moving to have the award confirmed; (3) misinforming plaintiff regarding post-award settlement negotiations; obstructing plaintiff's ability to effectively negotiate a settlement through his new counsel; and causing the settlement proceeds to be held up in federal court.

However, on appeal, plaintiffs only raise arguments related to the first two aspects of the claimed malpractice. Plaintiffs alleged that defendants' negligence proximately caused them to suffer damages in the form of loss of the opportunity to recover the full amount of damages to which plaintiffs were entitled for the arbitrated claims, and in causing plaintiff to relinquish his medical privileges at Tenet for a lower amount than he could have otherwise negotiated.

Regarding the arbitrator's calculation of the damages award, plaintiffs specifically alleged that the arbitration award should have been $2,572,801 higher had the arbitrator used the numbers from Chart B as indicated in the written opinion. Plaintiffs alleged that defendants were professionally negligent by failing to recognize this discrepancy and failing to seek clarification and correction from the arbitrator before moving to confirm the award.

Chart A and Chart B were attached to the first amended complaint, and it is evident that the monetary arbitration award was based on the numbers in Chart A, which are undisputedly lower than the numbers for the corresponding years in Chart B. The written arbitration award references Chart B with respect to plaintiff's front pay award and does not specifically mention the source for determining the backpay award.

Accepting plaintiff's allegations as true, which we must, *El-Khalil*, 504 Mich at 159-160, plaintiff has facially alleged all of the elements of a legal malpractice claim based on the alleged discrepancy in the arbitrator's award, *Bowden*, 310 Mich App at 503.

However, contrary to this finding, the trial court ruled that as a matter of law, there was no remedy that defendants could have pursued and that there was no discovery available that could prove that the arbitrator made an error as opposed to merely awarding an amount lower than the amount plaintiff believed he was entitled to receive. The trial court ruled that even though plaintiff may have believed he deserved a larger monetary award, or that the arbitrator intended to grant him a greater award, defendants could not have done anything as the plaintiff's counsel to change the outcome once the award was issued as there was no way to prove that the arbitrator made an error in stating the amount of the award. Thus, the trial court determined that as a matter of law there was no factual development that could possibly occur that would demonstrate that defendants were negligent—since there was no means of proving that there was an error that defendants had a duty to detect—and that there was no means of demonstrating causation between any alleged negligence and the alleged damages, thereby justifying the grant of summary disposition under (C)(8). See *El-Khalil*, 504 Mich at 159-160.

The trial court ruled that there was no "legal basis" for an "appeal" of the arbitrator's awarded amount under the JAMS rules or the Federal Arbitration Act (FAA). Specifically, the trial court concluded that the award could not have been challenged under JAMS rule 24(j) because that rule only allows an arbitrator to correct a "computational, typographical, or other similar error" and the error alleged by plaintiff did not fall within that definition. The trial court characterized

plaintiff's alleged error as a challenge to the substantive merits of the award amount and as a claim that the arbitrator focused on the "wrong chart." Furthermore, the trial court also ruled that under the FAA, an arbitration award could not be altered unless it appeared from the face of the award that there was a material miscalculation or mathematical error, and there was no such error in this case. The court stated, "The law permits no review of an arbitrator's mental path leading to the award."

The trial court's ruling implicates the element of proximate cause. Demonstrating proximate cause in a legal malpractice action requires the plaintiff to " 'show that *but for* the attorney's alleged malpractice, he would have been successful in the underlying suit.' " *Bowden*, 310 Mich App at 503, quoting *Charles Reinhart Co v Winiemko*, 444 Mich 579, 586; 513 NW2d 773 (1994). As our Supreme Court has stated:

> Often the most troublesome elements of a legal malpractice action is proximate cause. As in any tort action, to prove proximate cause a plaintiff in a legal malpractice action must establish that the defendant's action was a cause in fact of the claimed injury. Hence, a plaintiff must show that *but for* the attorney's alleged malpractice, he would have been successful in the underlying suit. In other words, the client seeking recovery from his attorney is faced with the difficult task of proving two cases within a single proceeding. To hold otherwise would permit a jury to find a defendant liable on the basis of speculation and conjecture. Although the "suit within a suit" concept is not universally applicable, it applies where the alleged negligent conduct involves the failure of an attorney to properly pursue an appeal. [*Charles Reinhart Co*, 444 Mich at 586-587 (citations and some quotation marks omitted).]

As an initial matter, the trial court appears to have misunderstood the precise nature of plaintiffs' allegations. Contrary to the trial court's view, plaintiff did not allege that defendants should have challenged the amount of the award simply to obtain a higher amount. Rather, plaintiff alleged that the language of the arbitration award indicated that plaintiff was entitled to damages as indicated in the expert's Chart B, while simultaneously using the numbers for damages from Chart A. Either, the arbitrator used the intended damages amount and incorrectly cited the wrong chart, or the arbitrator cited the correct chart and mistakenly used numbers from a different chart. Hence, there appears to be a discrepancy in the arbitrator's opinion. The trial court, however, concluded that any apparent discrepancy was simply intentional as a matter of law and that the amount of the award could not be disturbed because it was not a "computational, typographical, or other similar error" and a challenge to the award would inherently involve an evaluation of the substantive merits and the arbitrator's internal mental processes, which is not authorized under JAMS Rule 24(j). The trial court concluded that it was impossible to determine if the error claimed by plaintiff existed. Additionally, the court found that defendants could not have taken any action to address such an alleged error in the arbitration award. As a result, the trial court opined, plaintiff would be unable to establish the proximate cause element of his legal malpractice claim.

At issue is JAMS Rule 24(j), which provides:

> (j) Within seven (7) calendar days after service of a Partial Final Award or Final Award by JAMS, any Party may serve upon the other Parties and file with

JAMS *a request that the Arbitrator correct any computational, typographical or other similar error in an Award* (including the reallocation of fees pursuant to Rule 31(c) or on account of the effect of an offer to allow judgment), or the Arbitrator may sua sponte propose to correct such errors in an Award. A Party opposing such correction shall have seven (7) calendar days thereafter in which to file and serve any objection. The Arbitrator may make any necessary and appropriate corrections to the Award within twenty-one (21) calendar days of receiving a request or fourteen (14) calendar days after his or her proposal to do so. The Arbitrator may extend the time within which to make corrections upon good cause. The corrected Award shall be served upon the Parties in the same manner as the Award. [Emphasis added.]

The JAMS rules do not define "computational, typographical or other similar error." JAMS Rule 11(a) provides that "[o]nce appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing[,]" and the "resolution of the issue by the Arbitrator shall be final." The first question we must answer is whether the error alleged by plaintiff in this case—that there was a discrepancy between the intended source of the numbers used to calculate the award and the actual source used for those numbers—would, if established as true, *El-Khalil*, 504 Mich at 159-160, qualify as a "computational, typographical or other similar error" under JAMS Rule 24(j).

Like other similarly worded arbitration rules from sources other than JAMS, JAMS Rule 24(j) is essentially a codification of the common-law *functus officio* doctrine. See *Int'l Brotherhood of Electrical Workers, Local Union 824 v Verizon Florida, LLC*, 803 F3d 1241, 1248 (CA 11, 2015) (concluding that a substantively similar rule from the American Arbitration Association (AAA) Labor Arbitration Rules "essentially codifie[d] the common law doctrine of *functus officio*" where the rule provided in relevant part that "[w]ithin 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, technical, or computational errors in the award[,]" but the "arbitrator is not empowered to redetermine the merits of any claim already decided") (emphasis omitted).[5] *Functus officio* is a "common law rule (meaning 'task performed')" and this "default" rule "provides that, while an arbitrator may correct clerical, typographical, or computational errors in a final award, he has no power to revisit the merits of the award after it has issued." *Id*. at 1245, 1249 (quotation marks and citation omitted).

The types of errors that an arbitrator may correct include those clerical mistakes, obvious errors of arithmetic computation, and ambiguities requiring clarification where the arbitrator's correction does "not attempt to alter the substance of his analysis" and does not in any way "reopen the merits of the controversy." *Teamsters Local 312 v Matlack, Inc*, 118 F3d 985, 991-992 (CA 3, 1997) (quotation marks and citation omitted). Mistakes in computation and clerical errors in this context that may be corrected have been described as being "not mistakes in the decision itself,

---

[5] Decisions of lower federal courts may be considered persuasive. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

but blunders in writing out the decision." *First Nat'l Bank of Clarion v Brenneman*, 114 Pa 315, 320; 7 A 910 (1886) (quotation marks and citation omitted), cited with approval by *La Vale Plaza, Inc v R S Noonan, Inc*, 378 F2d 569, 573 & n 16 (CA 3, 1967). "[T]he clarification of an ambiguity closely resembles the correction of a mistake apparent on the face of the award and the determination of an issue which the arbitrators had failed to decide." *La Vale Plaza*, 378 F2d at 573.

Here, accepting plaintiff's allegations as true, *El-Khalil*, 504 Mich at 159-160, that there was a discrepancy between the intended source of the numbers used to calculate the award and the actual source used for those numbers, plaintiff has alleged a "blunder" in writing the decision that could be corrected without altering the substance of the arbitrator's analysis or reopening the merits of the decision. Accordingly, this error would qualify as a "computational, typographical or other similar error" under JAMS Rule 24(j).

Nevertheless, the heart of the issue, as acknowledged by the trial court, ultimately hinges on determining the arbitrator's intent. To successfully support his legal malpractice claim, plaintiff must prove that the arbitrator intended to award a higher amount using the Chart B numbers, and not simply that she made a typographical error or another decision in calculating the award that could explain the apparent discrepancy without intending to grant a higher award. Failing to demonstrate this would make it impossible for plaintiff to show that defendants' failure to seek correction under JAMS 24(j) caused any injury, thus preventing plaintiff from establishing this theory of malpractice. *Bowden*, 310 Mich App at 503. Furthermore, as rightly recognized by the trial court, it is not permissible in the context of this separate malpractice lawsuit to directly inquire what the arbitrator intended to do in the original arbitration *Mahir D Elder, MD, PC*, 343 Mich App at 392-393.

However, the trial court erred by concluding that because plaintiff's ability to demonstrate proximate causation under these circumstances depended on being able to show that plaintiff would have received a favorable ruling from the arbitrator if defendant had sought correction of the award under JAMS Rule 24(j), that necessarily meant that the *only* means of making such a showing was to directly ask the arbitrator personally for an answer to that question.

As this Court stated in the prior appeal in this matter, and as the trial court acknowledged on remand, " 'centuries of precedent' confirm that a judge cannot be compelled to testify or otherwise answer 'on matters of judicial decision-making,' " and "[o]ur Legislature has extended this prohibition to arbitrators." *Mahir D Elder, MD, PC*, 343 Mich App at 389 (citation omitted).

It is important to note that here, because plaintiff cannot force the arbitrator to testify to prove legal malpractice, it does not necessarily follow that proving legal malpractice is impossible. The malpractice claim may depend on figuring out what a judge or an arbitrator would have decided on an issue within their authority in the original case.

In *Charles Reinhart Co*, 444 Mich at 582, our Supreme Court addressed the issue "whether proximate cause in a legal malpractice action alleging negligence during an appeal is an issue of law reserved for the court or an issue of fact reserved for the jury." Noting the application of the "suit-within-a-suit concept" when "the alleged negligent conduct involves the failure of an attorney to properly pursue an appeal," the Court stated, "In a legal malpractice action alleging

negligence in an appeal a plaintiff must prove two aspects of causation in fact: whether the attorney's negligence caused the loss or unfavorable result of the appeal, and whether the loss or unfavorable result of the appeal in turn caused a loss or unfavorable result in the underlying litigation." *Id*. at 587-588 (quotation marks and citation omitted). The Court held "that the issue is reserved to the court because whether an appeal would have been successful intrinsically involves issues of law within the exclusive province of the judiciary." *Id*. at 582. Our Supreme Court quoted with approval the rationale set forth by the Oregon Supreme Court, reproduced here in relevant part as follows:

> "But we do not believe that the issue of causation in the malpractice case is the retrospective prediction of the actual behavior of a court on an issue of law, any more than that of a factfinder of an issue of fact. The object in the second trial is not to reconstruct what [the trial court] would actually have done, or what the judges of the Court of Appeals would actually have done on appeal. Rather, with respect to an issue of law in the earlier case, the issue in the malpractice case is what the outcome should have been if the issue had been properly presented, under the law as it was at the time or could have been convincingly argued to be." [*Id*. at 596-597, quoting *Chocktoot v Smith*, 280 Or 567, 573; 571 P2d 1255 (1977) (alteration in original).]

With these basic principles in mind, the current case becomes more straightforward. In the context of this malpractice claim, the trial court will need to determine what the outcome should have been under the relevant legal principles if the defendants had promptly moved to correct the award under JAMS 24(j). Although the trial court, in this case, was hesitant to do so, this task falls within the purview of a member of the judiciary because"[w]hile ambiguities within the law exist, they are resolved not by the predilections of individual judges, but by a reasoned application of legal principles." *Charles Reinhart Co*, 444 Mich at 598.

The trial court made an error in this case by concluding that it was impossible to determine whether the plaintiffs could establish their malpractice claim. This ruling was based on a motion under (C)(8), which only seeks to determine if a claim has been *alleged*. Here, a claim has been alleged, so the question of whether the plaintiffs can successfully establish their claim should be addressed in a motion under (C)(10). The trial court can determine whether a judgment contains a clerical mistake rather than a substantive mistake. The trial court's dismissal of plaintiff's malpractice claim under (C)(8) was thus in error, as it was based on defendants' failure to seek correction of the arbitration award.

Turning to plaintiff's malpractice claim based on defendants' failure to seek Abdrabboh's attorney fees, plaintiffs alleged in the first amended complaint that defendants were professionally negligent by failing to request Abdrabboh's attorney fees that could have properly been recovered in the arbitration. The trial court dismissed this claim under (C)(8) on the ground that under *Simko v Blake*, 448 Mich 648; 532 NW2d 842 (1995), an attorney is not liable for tactical decisions made in good faith, that are well founded in the law, and are in the client's best interest. In *Simko*, the Supreme Court stated:

> [M]ere errors in judgment by a lawyer are generally not grounds for a malpractice action where the attorney acts in good faith and exercises reasonable care, skill, and

-11-

diligence. Where an attorney acts in good faith and in honest belief that his acts and omissions are well founded in law and are in the best interest of his client, he is not answerable for mere errors in judgment. [*Id*. at 658 (citation omitted).]

Here, the trial court opined that defendant made this decision based on the exercise of her professional judgment. However, the question of whether the exercise of professional judgment was reasonable and whether the decision was "well founded in law" involves matters of evidentiary proof that are inappropriate to resolve on a motion under (C)(8). *El-Khalil*, 504 Mich at 162. The trial court, therefore, erred by granting summary disposition under (C)(8) on this basis.

To the extent defendants argue that the trial court's ruling was supported by the e-mail attached to the first amended complaint in which defendant stated that she decided not to pursue Abdrabboh's fees, plaintiffs did not concede that defendant's legal research was adequate and the trial court therefore could not rely on this e-mail as substantive evidence to defeat plaintiff's claim on a motion under (C(8). See *El-Khalil*, 504 Mich at 163 ("The trial court's error was not in considering the e-mails as part of the pleadings; the trial court erred by considering the content of the e-mails as substantive evidence sufficient to dismiss plaintiff's claim under MCR 2.116(C)(8).").

## B. COUNTS II & IV—BREACH OF FIDUCIARY DUTY

Next, plaintiffs argue that the trial court erred when it granted defendants' motion for summary disposition with respect to Counts II and IV alleging claims for breach of fiduciary duty.

In *Teadt v Lutheran Church Missouri Synod*, 237 Mich App 567, 580-581; 603 NW2d 816 (1999), this Court observed:

> This Court has explained that a fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another. Relief is granted when such position of influence has been acquired and abused, or when confidence has been reposed and betrayed. A person in a fiduciary relation to another is under a duty to act for the benefit of the other with regard to the matters within the scope of the relation. [Citations omitted.]

"To establish a claim for breach of fiduciary duty, a plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages caused by the breach of duty." *Highfield Beach at Lake Mich v Sanderson*, 331 Mich App 636, 666; 954 NW2d 231 (2020). An attorney owes a fiduciary duty to both current and former clients. *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 599-600, 603; 792 NW2d 344 (2010); *Fassihi v Sommers, Schwartz, Silver, Schwartz & Tyler, PC*, 107 Mich App 509, 514-515; 309 NW2d 645 (1981). However, "[t]he conduct required to constitute a breach of fiduciary duty requires a more culpable state of mind than the negligence required for malpractice." *Prentis Family Foundation v Barbara Ann Karmanos Cancer Inst*, 266 Mich App 39, 47; 698 NW2d 900 (2005).

Plaintiff claimed that defendants breached their fiduciary duty by failing to inform plaintiff about settlement negotiations with Tenet, not specifying in the fee agreement how attorney fees would be divided between the two potentially conflicting clients, intentionally and negligently

-12-

disclosing plaintiff's confidential information, making false statements about the status of the Tenet negotiations, not recognizing a conflict of interest between plaintiff and Dr. Kaki, continuing to represent plaintiffs' interests after the conflict of interest was apparent and in a manner against the plaintiffs' interests, violating MRPC 1.9 after plaintiffs terminated the attorney-client relationship, failing to properly acknowledge the error in the arbitrator's award and seek correction of that error, obstructing the plaintiffs' post-award settlement negotiation efforts, and delaying the plaintiffs' receipt of settlement proceeds. Plaintiff alleged that as a result of defendants' breach of fiduciary duty, they suffered damages in the form of a lower award and settlement than they would have otherwise obtained, as well as exemplary damages.

Accepting plaintiffs' allegations as true, *El-Khalil*, 504 Mich at 159-160, plaintiffs alleged all of the elements of a claim for breach of fiduciary duty and satisfied the requirements of notice pleading, *Highfield Beach*, 331 Mich App at 666; *Dalley*, 287 Mich App at 305. Contrary to the reasoning provided by the trial court for dismissing plaintiffs' breach of fiduciary duty claims, (1) plaintiffs alleged the existence of damages, (2) the fact that plaintiffs' allegations relied in part on standards included in the MRPC is not fatal as a matter of law to these claims, *Alpha Capital Mgt*, 287 Mich App at 630 ("[T]o the extent that any valid common law claim may happen to find a corollary in the MRPC, the rules of professional conduct do not eliminate or render invalid a fiduciary duty claim.") (quotation marks omitted), and (3) a plaintiff may assert both a malpractice claim and breach of fiduciary claim against an attorney, *Prentis Family Foundation*, 266 Mich App at 47.

Regarding the trial court's ruling that the breach-of-fiduciary-duty claim was subsumed by the legal malpractice claim, the trial court oversimplified the issue. We find the following legal analysis persuasive on this issue:

When determining whether a claim is duplicative in a legal malpractice action, the complaint must be read as a whole to determine the type of interest that is allegedly harmed, and how the claim occurred. *Aldred v O'Hara-Bruce*, 184 Mich App 488, 490; 458 NW2d 671 (1990). When a plaintiff alleges negligent legal representation, the claim is legal malpractice. *Id*. However, when the interest involved in a claim for damages is different from the interest involved in a legal malpractice claim, there may be separate claims. *Brownell v Garber*, 199 Mich App 519, 532; 503 NW2d 81 (1993).

The elements of a legal malpractice claim are (1) the existence of an attorney-client relationship, (2) negligent legal representation of the plaintiff, (3) the negligence proximately caused an injury, and (4) the fact and extent of the injury alleged. *Simko v Blake*, 448 Mich 648, 655; 532 NW2d 842 (1995). Relief for breach of a fiduciary duty may be sought when a "position of influence has been acquired and abused, or when confidence has been reposed and betrayed." *Vincencio v Ramirez*, 211 Mich App 501, 508; 536 NW2d 280 (1995). A claim for breach of fiduciary duty differs from a claim for legal malpractice because "[t]he conduct required to constitute a breach of fiduciary duty requires a more culpable state of mind than the negligence required for malpractice." *Prentis Family Foundation, Inc v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 47; 698 NW2d 900 (2005). The breach of fiduciary duty claim must be viewed within

the context of the entire complaint to ascertain the gravamen of the action. *Aldred*, 184 Mich App at 490-491. [*Barkovic v Zemke*, unpublished per curiam opinion of the Court of Appeals, issued September 16, 2021 (Docket No. 355425), pp 3-4.][6]

Here, plaintiffs alleged that defendants committed acts adverse to plaintiff's interests *after* the attorney-client relationship was terminated. An "attorney's duties of loyalty and confidentiality continue even after an attorney-client relationship concludes." *Alpha Capital*, 287 Mich App at 604. Plaintiffs also made allegations of intentional conduct adverse to their interests and in violation of defendants' duty of loyalty and confidentiality to plaintiff, in addition to acts constituting mere negligent representation. While the latter would constitute malpractice, the former constitutes allegations of more culpable conduct falling within the parameters of breach of fiduciary duty. *Prentis Family Foundation*, 266 Mich App at 47. On this record, we cannot conclude that as a matter of law, plaintiffs have failed to sufficiently allege claims for breach of fiduciary duty. Accordingly, the trial court erred by granting summary disposition under (C)(8) to defendants on these claims.

## C. COUNT I—BREACH OF CONTRACT

Next, plaintiffs argue that the trial court erred in dismissing their breach-of-contract count under MCR 2.116(C)(8).

Plaintiffs' first amended complaint alleged that the parties had executed a retainer agreement and that defendants breached this contract by claiming a lien on the proceeds of the settlement when the contract specifically provided that defendants were not entitled to any compensation in the event of a settlement and by claiming a lien "above and beyond the standard of reasonableness." Plaintiffs further alleged that defendants' breach of the contract caused plaintiffs to suffer damages. The trial court granted defendants' motion for summary disposition, ruling that there was no breach because a lien arose as an equitable right and because a lien was provided for in the contract. The trial court further ruled that plaintiffs had not alleged how claiming the lien caused any injury or what form the injury took. Additionally, the trial court concluded that there were no factual allegations supporting plaintiffs' assertion that the lien was beyond the standard of reasonableness.

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Zwiker v Lake Superior State Univ*, 340 Mich App 448, 477-478; 986 NW2d 427 (2022) (quotation marks and citation omitted). The interpretation of a contract presents a question of law that we review de novo. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 172; 848 NW2d 95 (2014). "When contract language is clear, unambiguous, and has a definite meaning, courts do not have the ability to write a different contract for the parties, or to consider extrinsic testimony to determine the parties' intent." *Kyocera Corp v Hemlock*

---

[6] Although this Court is not bound by unpublished opinions, we may consider them for their persuasive value. *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 42 n 10; 761 NW2d 151 (2008).

-14-

*Semiconductor, LLC*, 313 Mich App 437, 446; 886 NW2d 445 (2015) (quotation marks and citation omitted).

The retainer agreement provided that defendant was entitled to a percentage of "the net recovery" from plaintiff in exchange for legal services. That provision continued:

> "Net recovery" shall be defined as the total amount of recovery, before the withholding of any taxes, including the costs as taxed, plus court-awarded attorney fees, and interest included in or upon the amount of the judgment, less the costs advanced by the Attorneys that have been reimbursed to the Attorneys by the Client . . . .

Plaintiffs alleged that under this provision, defendant was not entitled to any fee based on the proceeds from the settlement because "net recovery" is limited to amounts reflected in a *judgment* and does not pertain to any settlement. This is a distorted reading of the contract. The contract pertinently defines "net recovery" as "*the total amount of recovery*, before the withholding of any taxes." (Emphasis added.) The provision then provides a list of other items that, for clarity's sake, are to be included in "net recovery," including costs, court-awarded attorney fees, "and interest included in or upon the amount of the judgment." The word "judgment" here does not override or limit the previous definition of "net recovery" as being "the total amount of recovery." It instead simply provides that any interest included in any judgment also is to be considered as part of the "net recovery."

Plaintiffs also alleged that paragraph 6 of the retainer agreement prohibited defendant from collecting any fees from the settlement, but this claim was also based on a clear mischaracterization of the contract language. That provision stated:

> In addition to the contingency fee agreement set forth above, in the event of a judgment (not a settlement) the parties to this agreement confirm that the Firm and any and all attorneys working in collaboration on this matter, will petition the Court for attorney fees pursuant to Federal or State Statutes. Client will receive a credit from all funds received to pay for attorney fees and costs previously paid by Client. The Client understands and agrees that the Court makes the decision as the reasonableness of the hourly rate, the number of hours to be paid by the Defendants and the amount of costs to be awarded by the Court, and the Firm shall not be responsible to the Client for any deficiency in the amount of fees and cost recovered. The Client further understands that the set off/credit for court awarded attorney fees and costs set forth in this paragraph 6 is only applicable if that is obtained on Client's behalf on an enforceable judgment.

Contrary to plaintiffs' allegations, this provision does not prohibit defendants from collecting fees on a settlement amount; it merely describes when defendants will petition the court for attorney fees and costs from the opposing side and how any such recovery will be credited toward amounts defendants billed plaintiffs. Further, plaintiffs also ignore Paragraph 3 of the contract, where the parties expressly agreed that defendants "shall have a lien for services and for any costs or disbursements upon all monies paid or payable." Accordingly, plaintiffs did not allege any actions by defendants that could constitute a breach of the contract and the trial court did not

err by granting summary disposition in defendants' favor under (C)(8) on this claim. *Zwiker*, 340 Mich App at 477-478.

### III. REMAINING ISSUES

Plaintiffs also argue that we should remand this matter to a different judge. "We may remand to a different judge if the original judge would have difficulty in putting aside previously expressed views or findings, if reassignment is advisable to preserve the appearance of justice, and if reassignment will not entail excessive waste or duplication." *Bayati v Bayati*, 264 Mich App 595, 602-603; 691 NW2d 812 (2004). "The general concern when deciding whether to remand to a different trial judge is whether the appearance of justice will be better served if another judge presides over the case." *Id*. at 602.

Plaintiffs' arguments in support of remanding this matter to a different judge focus on the judge's decisions in favor of defendant and comments by the judge that, in plaintiffs' view, indicated that the judge viewed plaintiffs' cause of action as illegitimate. "[R]epeated rulings against a litigant, no matter how erroneous, and how vigorously and consistently expressed, are not disqualifying." *Wayne Co Prosecutor v Parole Bd*, 210 Mich App 148, 155; 532 NW2d 899 (1995) (quotation marks and citation omitted). Based on our review of the record, we find nothing that would convince us that the judge will be unable to put aside any previously expressed views or that actual bias or prejudice exists. *Id*. Plaintiffs have not "demonstrate[d] that the judge would be unable to rule fairly on remand given his past comments or expressed views." *Bayati*, 264 Mich App at 603. Accordingly, we decline plaintiffs' request to remand to a different judge.

Finally, to the extent the parties argue whether plaintiff's professional corporation is a proper party in this case, the trial court did not specifically address that issue. The parties may pursue this issue in the trial court on remand. *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 210; 920 NW2d 148 (2018).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Neither party has prevailed in full; no costs are awarded. MCR 7.219(A).

/s/ Jane E. Markey
/s/ Stephen L. Borrello
/s/ Kristina Robinson Garrett